UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| JOHNNIE L. MOORE, | ) | 1:04-CV-05476 OWW GSA HC |
| | ) | |
| Petitioner, | ) | |
| | ) | FINDINGS AND RECOMMENDATION |
| v. | ) | REGARDING PETITION FOR WRIT OF |
| | ) | HABEAS CORPUS |
| JAMES A. YATES, | ) | |
| | ) | |
| Respondent. | ) | |
| | ) | |

Petitioner is a state prisoner proceeding pro se with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.

**BACKGROUND**

Petitioner is currently in the custody of the California Department of Corrections pursuant to a judgment of the Superior Court of California, County of Kern, following his conviction by jury trial on February 8, 2001, of possession of cocaine base for sale (Cal. Health & Saf. Code § 11351.5) and active participation in a criminal gang (Cal. Penal Code § 186.22(a)). See Exhibit 1, Respondent's Motion to Dismiss (hereinafter "Motion"). He was sentenced to serve a term of eleven years in state prison. Id.

Petitioner filed a notice of appeal to the California Court of Appeals, Fifth Appellate District (hereinafter "Fifth DCA"). On October 23, 2002, the Fifth DCA affirmed the judgment. See Exhibit

3, Motion. On December 2, 2002, Petitioner filed a petition for review in the California Supreme Court. See Exhibit 4, Motion. The petition was denied on January 14, 2003. Id.

On April 9, 2003, Petitioner filed a petition for writ of habeas corpus in the Kern County Superior Court. See Exhibit 5, Motion. The petition was denied on May 7, 2003. Id. Petitioner next filed a petition for writ of habeas corpus in the Fifth DCA on May 20, 2003. See Exhibit 6, Motion. The Fifth DCA denied the petition on June 12, 2003. Id. On June 27, 2003, Petitioner filed a petition for writ of habeas corpus in the California Supreme Court. See Exhibit 7, Motion. The petition was denied on March 3, 2004. Id.

On November 23, 2004, Petitioner filed a federal petition for writ of habeas corpus in this Court. The petition was a mixed petition containing exhausted and unexhausted claims, and the Court granted Petitioner a stay to return to the state courts to exhaust his state remedies. On December 16, 2004, Petitioner filed a petition for writ of habeas corpus in the California Supreme Court. See Lodged Doc. No. 3.[1] On November 2, 2005, the petition was denied. See Lodged Doc. No. 4. Petitioner then notified this Court and filed an amended petition on December 1, 2005. The petition contains the following claims for relief: 1) Petitioner claims the conviction was obtained by use of evidence gained pursuant to an unconstitutional search and seizure; 2) Petitioner was denied the effective assistance of trial and appellate counsel; 3) Petitioner was denied due process and the Sixth Amendment right to confront witnesses when hearsay evidence was admitted; and 4) The evidence was insufficient to prove Petitioner "actively participated in gang activity." Respondent filed an answer to the petition on February 23, 2006. Petitioner filed a traverse on June 8, 2006.

**FACTUAL BACKGROUND**[2]

On October 20, 2000, Bakersfield Police Officer John Talbot, along with two probation officers, knocked on the door of apartment 15 on Orange Street in Bakersfield. The officers were there to conduct a probation search, but later learned they were at the wrong address. While waiting for someone to answer the door, the officer heard people moving around inside of the apartment.

---

[1] "Lodged Doc." refers to the documentation lodged by Respondent with his answer.

[2] The facts are derived from the factual summary set forth by the Fifth DCA in its opinion of October 23, 2002, and are presumed correct. 28 U.S.C. §§ 2254(d)(2), (e)(1). See Exhibit 3, Motion.

This concerned the officer because of the possibility that the people inside were hiding or destroying contraband. After 30 to 60 seconds, John "Scooter" Bryant answered the door. Officer Talbot asked Bryant if he could enter. Meanwhile, the officer looked past Bryant to the interior of the apartment. He observed Archie Weir, whom he recognized as an East Side Crip (ESC) member, peering around a wall, looking in the direction of the door. Weir then disappeared behind the wall and Officer Talbot heard a toilet flush. Fearing that Weir was destroying contraband, the officer immediately entered the apartment.

In searching the apartment, Officer Talbot found Petitioner along with two others in a bedroom. All three were lying on the ground. The apartment contained little furniture and no dishes or food in the cupboards. It did not appear that anyone was living there. Located in a closet was an infant car seat. Secreted in the car seat the officer found a loaded .38-caliber derringer. Additionally, officers discovered 254 rounds of .38-caliber ammunition in the apartment.

Officer Talbot also testified regarding a prior contact with Petitioner. In 1995, Talbot came into contact with Petitioner while he was in a car with two other people. Both individuals had identified themselves as ESC members to the officer. At the time of the contact, the officer discovered a loaded firearm in the vehicle along with a quantity of marijuana.

Officer Martin Herredia testified that inside of the apartment he found baggies that were commonly used to package drugs for sale. Although baggies themselves are a common item, the fact that there was no food in the apartment indicated they were used in drug sales. In addition, he found razor blades containing a white residue. This was significant because razor blades are often used to cut cocaine base which is an off-white substance. Furthermore, the apartment itself was sparsely furnished and had no clothing which indicated it was used to package and sell drugs. A search of Petitioner revealed $7. Bryant possessed $115, Weir had $17 and the fourth occupant of the apartment had $75.

Officer Herredia also noted that he found plastic floating in the toilet in the bathroom. The plastic contained bindles of suspected cocaine base. The parties stipulated the plastic contained .46 grams of a substance containing cocaine. The officer questioned Petitioner about his presence in the apartment, and Petitioner claimed he was there only to buy drugs. Petitioner identified himself as

U.S. District Court
E. D. California           cd                                3

"Johnnie Ball" but the officer knew that was not Petitioner's correct name. The officer persisted in asking Petitioner for his true name, and Petitioner eventually correctly identified himself. When the officer placed Petitioner in his patrol car, Petitioner told the officer he had secreted an item between his buttocks. The item was a plastic baggie containing 4.43 grams of marijuana and nine bindles of cocaine base weighing 1.53 grams.

Petitioner denied living at the apartment, but he had a key to the front door on his person. No other person in the apartment had a key to the door. A further search of Petitioner revealed a yellow bandana in his right front pocket.

Officer Herredia questioned Petitioner regarding his presence in the apartment. Petitioner claimed he was only there to buy drugs; however, he stated that he did not know who he was there to buy drugs from. The officer described certain physical characteristics of people who use cocaine base, and testified that Petitioner did not exhibit any of these characteristics. Additionally, Petitioner did not exhibit symptoms of being under the influence of a narcotic and was not in possession of any narcotic paraphernalia.

Officer Robert Guyton testified regarding gangs. He was familiar with the ESC through his contact with gang members. He estimated the gang had as many as 600 to 800 members. The gang utilizes the color blue; however, if they are not using blue and they are using a color, they use gold or yellow. Officer Guyton explained that since the enactment of Cal. Penal Code section 186.22, gang members are less likely to "fly" their colors or to have gang tattoos.

Officer Guyton relayed facts relating to a murder and attempted murder committed by ESC members. The officer opined that those crimes were committed in furtherance of the ESC. Officer Guyton also explained that the ESC engaged in various crimes, including murder, robbery, assault with a deadly weapon, drive-by shootings, drug sales, witness intimidation, and various types of thefts.

Officer Guyton opined that Petitioner was a member of the ESC. This opinion was based in part upon the fact that members of a gang typically do not associate with non-gang members, especially if they are committing crimes. This is because gang members know they can trust each other to provide protection from the police. The fact that Petitioner was uncooperative with police

U.S. District Court
E. D. California

cd

4

upon his arrest was significant because it demonstrated that Petitioner had an alliance with the other people in the apartment. Additionally, Petitioner had claimed an association with the ESC on his booking sheet, which further indicated his gang status. This was important because falsely claiming gang status can have severe consequences. Furthermore, Petitioner was in possession of a yellow bandana which is a color of the ESC. Officer Guyton also opined that Petitioner committed the charged crimes to further the ESC, because the gang earned its money through the sale of narcotics.

Detective Joseph Aldana testified as an expert on narcotics. He opined that Petitioner possessed the cocaine base for the purpose of sale. This was based upon the amount Petitioner possessed and the way it was packaged. According to Aldana, drug users rarely possess more than one or two pieces of the drug at any one time. This is because of the addictive nature of the drug. Users also usually cannot afford to buy more than one piece at a time and anything they buy they typically use immediately; they do not store additional pieces for later use. Additionally, user of cocaine base exhibit certain physical characteristics, such as unkempt hair, a dirty appearance, burnt and blistered fingertips, and cracked, dry and discolored lips. Petitioner did not possess these characteristics. Furthermore, users of cocaine base typically possess paraphernalia to ingest the drug, but Petitioner had none.

## DISCUSSION

### I. Jurisdiction

Relief by way of a petition for writ of habeas corpus extends to a person in custody pursuant to the judgment of a state court if the custody is in violation of the Constitution or laws or treaties of the United States. 28 U.S.C. § 2254(a); 28 U.S.C. § 2241(c)(3); Williams v. Taylor, 529 U.S. 362, 375 fn.7 (2000). Petitioner asserts that he suffered violations of his rights as guaranteed by the U.S. Constitution. In addition, the conviction challenged arises out of the Kern County Superior Court, which is located within the jurisdiction of this court. 28 U.S.C. § 2254(a); 2241(d). Accordingly, the Court has jurisdiction over the action.

On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its enactment. Lindh v. Murphy, 521 U.S. 320 (1997), *cert. denied,* 522 U.S. 1008 (1997); Jeffries v. Wood, 114

F.3d 1484, 1499 (9th Cir. 1997), *quoting* Drinkard v. Johnson, 97 F.3d 751, 769 (5th Cir.1996), *cert. denied,* 520 U.S. 1107 (1997), *overruled on other grounds by* Lindh v. Murphy, 521 U.S. 320 (1997) (holding AEDPA only applicable to cases filed after statute's enactment).  The instant petition was filed after the enactment of the AEDPA; thus, it is governed by its provisions.

**II.  Legal Standard of Review**

This Court may entertain a petition for writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).

The instant petition is reviewed under the provisions of the Antiterrorism and Effective Death Penalty Act which became effective on April 24, 1996.  Lockyer v. Andrade,  538 U.S. 63, 70 (2003).  Under the AEDPA, an application for habeas corpus will not be granted unless the adjudication of the claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State Court proceeding." 28 U.S.C. § 2254(d); see Lockyer, 538 U.S. at 70-71; see Williams, 529 U.S. at 413.

As a threshold matter, this Court must "first decide what constitutes 'clearly established Federal law, as determined by the Supreme Court of the United States.'" Lockyer, 538 U.S. at 71, *quoting* 28 U.S.C. § 2254(d)(1).  In ascertaining what is "clearly established Federal law," this Court must look to the "holdings, as opposed to the dicta, of [the Supreme Court's] decisions as of the time of the relevant state-court decision." Id., *quoting* Williams, 592 U.S. at 412. "In other words, 'clearly established Federal law' under § 2254(d)(1) is the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." Id.

Finally, this Court must consider whether the state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law." Lockyer, 538 U.S. at 72, *quoting* 28 U.S.C. § 2254(d)(1). "Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the] Court has on a set of

materially indistinguishable facts." Williams, 529 U.S. at 413; see also Lockyer, 538 U.S. at 72. "Under the 'reasonable application clause,' a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Williams, 529 U.S. at 413.

"[A] federal court may not issue the writ simply because the court concludes in its independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Id. at 411. A federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was "objectively unreasonable." Id. at 409.

Petitioner has the burden of establishing that the decision of the state court is contrary to or involved an unreasonable application of United States Supreme Court precedent. Baylor v. Estelle, 94 F.3d 1321, 1325 (9th Cir. 1996). Although only Supreme Court law is binding on the states, Ninth Circuit precedent remains relevant persuasive authority in determining whether a state court decision is objectively unreasonable. See Duhaime v. Ducharme, 200 F.3d 597, 600-01 (9th Cir.1999).

AEDPA requires that we give considerable deference to state court decisions. The state court's factual findings are presumed correct, 28 U.S.C. § 2254(e)(1), and we are bound by a state's interpretation of its own laws. Souch v. Schaivo, 289 F.3d 616, 621 (9th Cir.2002), *cert. denied*, 537 U.S. 859 (2002), *rehearing denied*, 537 U.S. 1149 (2003).

**III. Review of Petitioner's Claims**

    **A. Ground One**

Petitioner first alleges the conviction was obtained by use of evidence that was seized in violation of the Fourth Amendment. Respondent correctly argues this claim is not cognizable on federal habeas review.

A federal district court cannot grant habeas corpus relief on the ground that evidence was obtained by an unconstitutional search and seizure if the state court has provided the petitioner with a "full and fair opportunity to litigate" the Fourth Amendment issue. Stone v. Powell, 428 U.S. 465, 494 (1976); Woolery v. Arvan, 8 F.3d 1325, 1326 (9th Cir. 1993), *cert denied*, 511 U.S. 1057 (1994).

The only inquiry this Court can make is whether Petitioner had a fair opportunity to litigate his claim, not whether Petitioner did litigate nor even whether the court correctly decided the claim. Ortiz-Sandoval v. Gomez, 81 F.3d 891, 899 (9th Cir. 1996); see also, Gordon v. Duran, 895 F.2d 610, 613 (9th Cir. 1990) (holding that because Cal. Penal Code § 1538.5 provides opportunity to challenge evidence, dismissal under Stone was necessary).

The policy behind the Stone Court's analysis is that the exclusionary rule is applied to stop future unconstitutional conduct of law enforcement. Stone, 428 U.S. at 492. However, excluding evidence that is not untrustworthy creates a windfall to the defendant at a substantial societal cost. See Stone, 428 U.S. at 489-90; Woolery, 8 F.3d at 1327-28. Thus, the Ninth Circuit has described the rationale for this rule by saying:

> The holding is grounded in the Court's conclusion that in cases where a petitioner's Fourth Amendment claim has been adequately litigated in state court, enforcing the exclusionary rule through writs of habeas corpus would not further the deterrent and educative purposes of the rule to an extent sufficient to counter the negative effect such a policy would have on the interests of judicial efficiency, comity and federalism.

Woolery, 8 F.3d at 1326; see also Stone, 428 U.S. at 493-494.

In this case, there is nothing in the record to demonstrate Petitioner was denied a fair opportunity to litigate his claim. Pursuant to Stone v. Powell, the Court cannot grant habeas relief. The claim should be denied.

**B. Ground Two**

In his second claim for relief, Petitioner argues he was denied effective assistance of trial and appellate counsel. In particular, he claims trial counsel failed to move to exclude evidence that was allegedly seized in violation of the Fourth Amendment. He also contends counsel failed to object to hearsay evidence. He further contends appellate counsel failed to raise trial counsel's failure to object on direct appeal.

The law governing ineffective assistance of counsel claims is clearly established for the purposes of the AEDPA deference standard set forth in 28 U.S.C. § 2254(d). Canales v. Roe, 151 F.3d 1226, 1229 (9th Cir. 1998.) In a petition for writ of habeas corpus alleging ineffective assistance of counsel, the court must consider two factors. Strickland v. Washington, 466 U.S. 668, 687

1  (1984); Lowry v. Lewis, 21 F.3d 344, 346 (9th Cir. 1994).  First, the petitioner must show that
2  counsel's performance was deficient, requiring a showing that counsel made errors so serious that he
3  or she was not functioning as the "counsel" guaranteed by the Sixth Amendment. Strickland, 466
4  U.S. at 687.  The petitioner must show that counsel's representation fell below an objective standard
5  of reasonableness, and must identify counsel's alleged acts or omissions that were not the result of
6  reasonable professional judgment considering the circumstances. Id. at 688; United States v.
7  Quintero-Barraza, 78 F.3d 1344, 1348 (9th Cir. 1995).  Judicial scrutiny of counsel's performance is
8  highly deferential.  A court indulges a strong presumption that counsel's conduct falls within the
9  wide range of reasonable professional assistance.  Strickland, 466 U.S. at 687; Sanders v. Ratelle, 21
10 F.3d 1446, 1456 (9th Cir.1994).

11      Second, the petitioner must demonstrate that "there is a reasonable probability that, but for
12 counsel's unprofessional errors, the result ... would have been different." Strickland, 466 U.S. at 694.
13 Petitioner must show that counsel's errors were so egregious as to deprive defendant of a fair trial,
14 one whose result is reliable. Id. at 688.  The court must evaluate whether the entire trial was
15 fundamentally unfair or unreliable because of counsel's ineffectiveness. Id.; Quintero-Barraza, 78
16 F.3d at 1345; United States v. Palomba, 31 F.3d 1356, 1461 (9th Cir. 1994).

17      A court need not determine whether counsel's performance was deficient before examining
18 the prejudice suffered by the petitioner as a result of the alleged deficiencies.  Strickland, 466 U.S. at
19 697.  Since the defendant must affirmatively prove prejudice, any deficiency that does not result in
20 prejudice must necessarily fail. However, there are certain instances which are legally presumed to
21 result in prejudice, e.g., where there has been an actual or constructive denial of the assistance of
22 counsel or where the State has interfered with counsel's assistance. Strickland, 466 U.S. at 692;
23 United States v. Cronic, 466 U.S. 648, 659, and n. 25 (1984).  Ineffective assistance of counsel
24 claims are analyzed under the "unreasonable application" prong of Williams v. Taylor, 529 U.S. 362
25 (2000).  Weighall v. Middle, 215 F.3d 1058, 1062 (2000).

26      Effective assistance of appellate counsel is also guaranteed by the Due Process Clause of the
27 Fourteenth Amendment.  Evitts v. Lucey, 469 U.S. 387, 391-405 (1985).  Claims of ineffective
28 assistance of appellate counsel are reviewed according to Strickland 's two-pronged test. See, e.g.,

Miller v. Keeney, 882 F.2d 1428, 1433 (9th Cir.1989); United States v. Birtle, 792 F.2d 846, 847 (9th Cir.1986). Therefore, as above, a defendant must show that appellate counsel's advice fell below an objective standard of reasonableness and that there is a reasonable probability that, but for counsel's unprofessional errors, defendant would have prevailed on appeal. Miller, 882 F.2d at 1434 & n. 9, *citing,* Strickland, 466 U.S. at 688, 694; Birtle, 792 F.2d at 849. However, appellate counsel does not have a constitutional duty to raise every nonfrivolous issue requested by defendant. Jones v. Barnes, 463 U.S. 745, 751-54 (1983); Miller, 882 F.2d at 1434 n. 10. The weeding out of weaker issues is widely recognized as one of the hallmarks of effective appellate advocacy. Miller, 882 F.2d at 1434. As a result, appellate counsel will frequently remain above an objective standard of competence and have caused his client no prejudice for the same reason - because he declined to raise a weak issue. Id.

Petitioner's two claims of ineffective assistance of trial counsel were first presented on April 9, 2003, in a petition for writ of habeas corpus to the Kern County Superior Court. See Exhibit 5, Motion. On May 7, 2003, the superior court denied the claims in a reasoned opinion. Id. Petitioner then presented those claims to the Fifth DCA and to the California Supreme Court. Both petitions were summarily denied. See Exhibits 6, 7, Motion. The California Supreme Court, by its "silent order" denying review of the Fifth DCA's decision, is presumed to have denied the claims presented for the same reasons stated in the opinion of the Fifth DCA. Ylst v. Nunnemaker, 501 U.S. 797, 803 (1991).

Petitioner's sole claim of ineffective assistance of appellate counsel was raised in a second petition for writ of habeas corpus to the California Supreme Court on December 16, 2004. See Lodged Doc. No. 3. On November 2, 2005, the petition was summarily denied. See Lodged Doc. No. 4. In such a situation where the state court supplies no reasoned decision, the Court independently reviews the record to determine whether the state court clearly erred in its application of Supreme Court law. Delgado v. Lewis, 223 F.3d 976, 982 (9th Cir.2000) ("Federal habeas review is not de novo when the state court does not supply reasoning for its decision, but an independent review of the record is required to determine whether the state court clearly erred in its application of controlling federal law."); see also, e.g., Greene v. Lambert, 288 F.3d 1081, 1089 (9th Cir.2002).

Delgado v. Lewis, 223 F.3d 976, 981 (9th Cir.2000). That is, although the Court independently reviews the record, it still defers to the state court's ultimate decision.

### 1. Failure to Move to Suppress Evidence

Petitioner first alleges defense counsel failed to move to suppress the evidence seized at the apartment based on a violation of Petitioner's Fourth Amendment rights. As the parties acknowledge, no motion to suppress was filed prior to trial. The parties also agree that the officers arrived at the wrong address, and the officers did not have a warrant to enter the premises. The claim is without merit, because a motion to suppress would have been denied.

"The exclusionary rule was adopted to effectuate the Fourth Amendment right of all citizens 'to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures. . . .'" United States v. Calandra, 414 U.S. 338, 347 (1974). "Where defense counsel's failure to litigate a Fourth Amendment claim competently is the principal allegation of ineffectiveness, the defendant must also prove that his Fourth Amendment claim is meritorious and that there is a reasonable probability that the verdict would have been different absent the excludable evidence in order to demonstrate actual prejudice." Kimmelman v. Morrison, 477 U.S. 365, 375 (1986).

In Rakas v. Illinois, 439 U.S. 128, 134, 140 (1978), the Supreme Court held that "it is proper to permit only defendants whose Fourth Amendment rights have been violated to benefit from the [exclusionary] rule's protections," and an illegal search only violates the rights of those who have "a legitimate expectation of privacy in the invaded place." "The established principle is that suppression of the product of a Fourth Amendment violation can be successfully urged only by those whose rights were violated by the search itself, not by those who are aggrieved solely by the introduction of damaging evidence." Alderman v. United States, 394 U.S. 165, 171 (1969). In other words, Fourth Amendment rights may not be vicariously asserted. Id. at 174. In this case, as correctly noted by Respondent, Petitioner maintained that the apartment was not his. RT 59. Petitioner also stated that he did not know any of the others at the apartment. RT 60. He stated he was only there to purchase some cocaine. RT 59. Petitioner, therefore, did not have standing to assert Fourth Amendment rights with respect to the premises, and consequently, any motion to suppress would

have been denied. Petitioner has not demonstrated prejudice resulting from counsel's failure, so the claim should be rejected.

### 2. Failure to Object to Hearsay

Petitioner next complains that counsel failed to object to hearsay evidence introduced by an expert witness. As will be discussed in Part C., *infra*, the trial court did not abuse its discretion in allowing the expert witness to testify. Therefore, counsel cannot be faulted for failing to object to the expert's testimony, and Petitioner cannot demonstrate prejudice.

### 3. Ineffective Assistance of Appellate Counsel

Petitioner also faults appellate counsel for failing to raise on appeal the above claim of ineffective assistance of trial counsel. As has been shown, however, the underlying claims are without merit. Therefore, Petitioner has not demonstrated that appellate counsel erred, or that Petitioner suffered any prejudice.

## C. Ground Three

Petitioner next alleges he was denied his Sixth Amendment right to confront witnesses when the trial court admitted certain hearsay evidence introduced by an expert witness.

This claim was first presented on direct appeal to the Fifth DCA. On October 23, 2002, the Fifth DCA denied the claim in a reasoned opinion. See Exhibit 3, Motion. On December 4, 2002, Petitioner filed a petition for review in the California Supreme Court. See Exhibit 4, Motion. The petition was summarily denied on January 15, 2003. Id. The California Supreme Court, by its "silent order" denying review of the Fifth DCA's decision, is presumed to have denied the claims presented for the same reasons stated in the opinion of the Fifth DCA. Ylst v. Nunnemaker, 501 U.S. 797, 803 (1991).

The Fifth DCA analyzed the claim as follows:

> Appellant contends that the trial court abused its discretion in allowing Officer Guyton to testify that appellant had admitted to being a member of the ESC. His argument seems to be based upon the premise that the prosecution was required to establish that appellant had made such an admission before the expert could rely upon the admission in forming his opinion. We find appellant's argument without merit.
>
> At trial, Officer Guyton was permitted to testify that based on his expert opinion appellant was a member of the ESC. According to Officer Guyton, his opinion was based upon

"the reports I have reviewed, based on the reasons that he was arrested for those reports, based on the fact during his booking he claimed he was a Crip gang member, based on the fact that I talked to other officers regarding Mr. Moore, and who he was in the company with at the times that he was arrested, those people were all active members and active documented members of [the] East Side Crip criminal street gang."

The officer was subsequently allowed to expand upon his basis for his opinion and stated that he had investigated whether appellant had claimed any gang affiliation when he was booked into the jail. He noted that appellant had claimed he was a "Crip" on his booking sheet which was significant because individuals do not claim a gang association when they are not members since doing so could have severe repercussions while in prison. In addition, he explained that the vast majority of people do not claim any gang affiliation when booked.

In a lengthy argument, appellant seems to contend that the trial court abused its discretion in admitting this testimony into evidence because the prosecution failed to provide evidence that appellant did in fact make such an admission on the booking sheet. His argument is twofold. First, he argues that the officer's opinion was improperly admitted because it was based upon unreliable hearsay. Second, he claims the jury was permitted to consider the inadmissible hearsay to prove the truth of the matter asserted, denying him his constitutional rights to due process and to confront and cross-examine witnesses. We find appellant's arguments without merit.

In *People v. Gardeley* (1996) 14 Cal.4th 605, 618, the California Supreme Court explained that pursuant to Evidence Code sections 801 and 802 an expert may base his opinion upon matter which is ordinarily inadmissible so long as the material is reliable. As *Gardeley* explained,

"[¶] Expert testimony may ... be premised on material that is not admitted into evidence so long as it is material of a type that is reasonably relied upon by experts in the particular field in forming their opinions. [Citations.] Of course, any material that forms the basis of an expert's opinion testimony must be reliable. [Citation.] For 'the law does not accord to the expert's opinion the same degree of credence or integrity as it does the data underlying the opinion. Like a house built on sand, the expert's opinion is no better than the facts on which it is based.' [Citation.] [¶] So long as this threshold requirement of reliability is satisfied, even matter that is ordinarily inadmissible can form the proper basis for an expert's opinion testimony. [Citations.] And because Evidence Code section 802 allows an expert witness to 'state on direct examination the reasons for his opinion and the matter ... upon which it is based,' an expert witness whose opinion is based on such inadmissible matter can, when testifying, describe the material that forms the basis of the opinion. [Citations.] [¶] A trial court, however, 'has considerable discretion to control the form in which the expert is questioned to prevent the jury from learning of incompetent hearsay.' [Citation.] A trial court also has discretion 'to weigh the probative value of inadmissible evidence relied upon by an expert witness ... against the risk that the jury might improperly consider it as independent proof of the facts recited therein.' [Citation.] This is because a witness's on-the-record recitation of sources relied on for an expert opinion does not transform inadmissible matter into 'independent proof' of any fact. [Citations.]" (Id. at pp. 618-619.)

Thus, as *Gardeley* makes clear, it is proper for an expert to base his opinion on inadmissible matter, including hearsay. (*People v. Gardeley, supra,* 14 Cal.4th at p. 619.) To the extent appellant argues the trial court erred in allowing Officer Guyton to base his opinion upon appellant's admission of gang membership, we reject this claim. Numerous cases have held that an expert may rely upon hearsay in forming his or her opinion. (See, e.g.,

*People v. Catlin* (2001) 26 Cal.4th 81, 137; *People v. Montiel* (1993) 5 Cal.4th 877, 919; *People v. Valdez* (1997) 58 Cal.App.4th 494, 510-511; *People v. Gamez* (1991) 235 Cal.App.3d 957, 968-969, disapproved on other grounds in *People v. Gardeley, supra,* 14 Cal.4th 605; *People v. McDaniels* (1980) 107 Cal.App.3d 898, 905.)

To the extent that appellant argues that the hearsay in this case did not meet the threshold requirement of reliability, he is mistaken. Appellant spends a significant amount of time arguing that his statement did not qualify as a declaration against penal interest within the meaning of Evidence Code section 1230. Whether or not appellant is correct in his assertion is of little import, inasmuch as the statement clearly qualifies as an admission by a party opponent. Section 1220 of the Evidence Code provides an exception to the hearsay rule for statements that are offered against the declarant in an action to which he is a party. Appellant's statement that he was a gang member qualifies under this exception. As a statutory exception to the hearsay rule, an admission by a party opponent is considered reliable. (*People v. Earnest* (1975) 53 Cal.App.3d 734, 741.) Consequently, we reject appellant's claim.

Appellant further argues that Officer Guyton's testimony that appellant had admitted gang membership on a booking sheet was improperly admitted to prove the truth of the matter asserted rather than simply admitted as a basis for his opinion pursuant to Evidence Code section 801. We need not address this claim as appellant points to nothing in the record indicating that he objected to the statement's admission for its truth. The trial court is not under a sua sponte duty to exclude evidence or instruct the jury regarding evidentiary limitations. (*People v. Montiel, supra*, 5 Cal.4th at p. 918.)

Appellant moved in limine to prevent the expert from testifying regarding appellant's prior contacts with the police where appellant was in the company of known gang members. The expert testimony, appellant reasoned, would consist solely of hearsay and would be more prejudicial than probative. In response, the prosecution provided the court with an offer of proof regarding the expert's proposed testimony, explaining that appellant had been previously arrested with other gang members in 1995. In addition, appellant had previously requested to be housed with other Crip members during the booking process, and appellant had previously identified himself as a ESC member to members of the Kern County Sheriff's Department.

After hearing the proposed evidence, the trial court ruled the expert could not testify regarding appellant's prior contacts with police where he was in the company of known gang members unless the prosecution brought forth direct evidence of the prior incidents. If such evidence was produced, then the expert could testify regarding whether such incidents would affect his opinion as to whether appellant was a gang member. Regarding appellant's booking statements, the trial court stated "I certainly don't have any problem with the defendant self-identifying as wanting to be housed with Crips when he is arrested." As we have already explained, appellant's statement qualifies as an admission by a party opponent and thus qualifies as an exception to the hearsay rule. It appears that the trial court's ruling was acknowledging the admissibility of appellant's statement. At trial, when the officer stated his opinion was based in part upon appellant's booking statement, appellant failed to make a hearsay objection.[2] Because appellant failed to make an objection in the trial court, he cannot challenge the admissibility of the evidence on appeal. (Evid. Code, § 353.)

To the extent appellant argues it was error for the prosecutor to rely upon appellant's admission regarding his gang membership in closing argument, we note that appellant failed to make any objection to the argument at trial. As such, any claim of prosecutorial misconduct is waived. (*People v. Berryman* (1993) 6 Cal.4th 1048, 1072, overruled on other grounds in *People v. Hill* (1998) 17 Cal.4th 800; *People v. Price* (1991) 1 Cal.4th 324, 447.)

See Exhibit 3, Motion (footnotes omitted).

The state court rejection of Petitioner's claim was not unreasonable. The Confrontation Clause of the Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against him." U.S. Const. am. VI.  In Ohio v. Roberts, 448 U.S. 56 (1980), the Supreme Court set forth the requirements for admission of a hearsay statement in a criminal trial when the declarant is unavailable, consistent with the requirements of the Confrontation Clause.  The Court explained that such a statement "is admissible only if it bears adequate 'indicia of reliability.'" Id. at 66; Hernandez v. Small, 282 F.3d 1132, 1137 (9th Cir. 2002).  Adequate reliability, the Court continued, can be demonstrated in one of two ways. First, "[r]eliability can be inferred without more in a case where the evidence falls within a firmly rooted hearsay exception." Id.  Second, if the evidence does not fall within a firmly rooted exception, it may be admitted if there is a sufficient "showing of particularized guarantees of trustworthiness." Id.; Hernandez, 282 F.3d at 1137.

In this case, the appellate court reasonably determined that the material relied upon by the officer was reliable. Moreover, as discussed by the appellate court, expert testimony may be based on hearsay so long as the expert relies on facts or data of a type reasonably relied on by experts in the field." Bieghler v. Kleppe, 633 F.2d 531 (9th Cir.1980); United States v. Sims, 514 F.2d 147, 149 (9th Cir.1975). The claim should be rejected.

**D.  Ground Four**

Petitioner next alleges there was insufficient evidence to support Petitioner's conviction of active participation in gang activity.

Like Ground Three, this claim was first raised on direct appeal to the Fifth DCA, which rejected it in a reasoned opinion. See Exhibit 3, Motion. He then raised it to the California Supreme Court by petition for review, but again was denied relief.  By its "silent order" denying review of the Fifth DCA's decision, the California Supreme Court is presumed to have denied the claim presented for the same reasons opined by the Fifth DCA. Ylst, 501 U.S. at 803.

In reviewing sufficiency of evidence claims, California courts expressly follow the Jackson standard enunciated in Jackson v. Virginia, 443 U.S. 307 (1979). See People v. Johnson, 26 Cal.3d

557, 575-578 (1980); see also People v. Thomas, 2 Cal.4th 489, 513 (1992).  Pursuant to the Supreme Court's holding in Jackson, the test in determining whether a factual finding is fairly supported by the record is as follows:

> [W]hether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.

Jackson, 443 U.S. at 319; see also Lewis v. Jeffers, 497 U.S. 764, 781 (1990).

Sufficiency claims are judged by the elements defined by state law.  Jackson, 443 U.S. at 324 n. 16. This Court must presume the correctness of the state court's factual findings. 28 U.S.C. § 2254(e)(1); Kuhlmann v. Wilson, 477 U.S. 436, 459 (1986).  This presumption of correctness applies to state appellate determinations of fact as well as those of the state trial courts.  Tinsley v. Borg, 895 F.2d 520, 525 (9th Cir.1990).  Although the presumption of correctness does not apply to state court determinations of legal questions or mixed questions of law and fact, the facts as found by the state court underlying those determinations are entitled to the presumption.  Sumner v. Mata, 455 U.S. 539, 597 (1981).

In rejecting this claim, the appellate court stated:

> Appellant argues his conviction for participating in a street gang and the true finding on the gang enhancement were in error because the evidence failed to demonstrate that he actively participated in a criminal street gang with knowledge that its members engage in a pattern of criminal gang activity. This, he claims, is based on the fact that the jury was able to consider only two instances in which appellant was associated with gang members, which was insufficient to demonstrate that he knew the people he was associated with were in fact members of the gang. Thus, he contends, his conviction was not based on "personal guilt" as required by the due process clause. He goes on to argue that his knowledge could not be inferred from his membership in the gang because there was no evidence to support his membership in the gang. We disagree with appellant's arguments.
>
> When the sufficiency of the evidence is challenged on appeal, the court reviews the whole record in the light most favorable to the judgment to determine whether it discloses substantial evidence - that is, evidence which is reasonable, credible, and of solid value from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt. (*People v. Welch* (1999) 20 Cal.4th 701, 758; *People v. Johnson* (1980) 26 Cal.3d 557, 578.) We presume in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence, including reasonable inferences based on the evidence and excluding inferences based on speculation or conjecture. (*People v. Tran* (1996) 47 Cal.App.4th 759, 771-772.) If the jury's findings are supported by the evidence and are reasonable, the appellate court will not reverse merely because a different finding might also be reasonable. (*People v. Redmond* (1969) 71 Cal.2d 745, 755.) The question on appeal is whether substantial evidence supports the jury's conclusion, not whether guilt was established beyond a reasonable doubt. (*People v. Hillery* (1919) 62 Cal.2d 692, 702-703.) "The same standard applies to the review of circumstantial evidence. (*People v. Bean* (1988) 46 Cal.3d

919, 932 ....)" (*People v. Ceja* (1993) 4 Cal.4th 1134, 1138.) "The substantial evidence rule is generous to the respondent on appeal and permits a trier of fact to draw reasonable inferences from the evidence." (*People v. Small* (1988) 205 Cal.App.3d 319, 325.)

Section 186.22 defines both a substantive offense (subd. (a)) and an enhancement (subd. (b)) created by the "California Street Terrorism Enforcement and Prevention Act of 1988," also known as the STEP Act. In order to establish the substantive offense under subdivision (a), the prosecution must prove the defendant: (1) actively participated in a criminal street gang; (2) with knowledge that its members engage, or have engaged, in a pattern of criminal activity; and (3) willfully promoted, furthered, or assisted in any felonious criminal conduct by members of that gang. (*People v. Castenada* (2000) 23 Cal.4th 743, 747: *People v Englebrecht* (2001) 88 Cal.App.4th 1236, 1259.)

As part of the prosecution's burden of proof, it must establish the defendant's active participation was more than "nominal or passive." (*People v. Castenada, supra,* 23 Cal.4th at pp. 746-747.) This does not mean that a defendant must have devoted all, or a substantial amount, of his time and efforts to gang activity. (*Id.* at p. 752.)

The enhancement provisions of section 186.22, subdivision (b), require proof of the following:

"... [T]hat the crime for which the defendant was convicted had been 'committed for the benefit of, at the direction of, or in association with any criminal street gang, with the specific intent to promote, further, or assist in any criminal conduct by gang members.' [Citation.] In addition, the prosecution must prove that the gang (1) is an ongoing association of three or more persons with a common name or common identifying sign or symbol; (2) has as one of its primary activities the commission of one or more of the criminal acts enumerated in the statute; and (3) includes members who either individually or collectively have engaged in a 'pattern of criminal gang activity' by committing, attempting to commit, or soliciting two or more of the enumerated offenses (the so-called 'predicate offenses') during the statutorily defined period. [Citation.]" *(People v. Gardeley, supra*, 14 Cal.4th at pp. 616-617, italics omitted.)

Appellant essentially argues that the prosecution failed to produce evidence which indicated that he knew the gang members participated in a pattern of criminal activity and that he willfully promoted, furthered or assisted the felonious conduct of the gang. He claims that the jury could not infer his knowledge of the gang's activities because there was insufficient evidence to support the expert's opinion that he was a member of the gang. We find the evidence supported a finding that appellant (1) was a member of the gang; (2) knew of the gang's actions; and (3) willfully assisted in the gang's criminal conduct.

In evaluating the sufficiency of the evidence, all presumptions are made in favor of the judgment. (*People v. Tran, supra*, 47 Cal.App.4th at pp. 771-772.) At trial the prosecutor introduced evidence from which the jury could infer that appellant was a member of the ESC. When appellant was arrested he was in possession of a yellow bandana, which, according to Officer Guyton, was one of the colors of the ESC. Although the Crip gang is normally associated with the color blue, Officer Guyton explained that the ESC uses gold or yellow as their color if they use a color at all. At the time of his arrest, appellant was in the company of three other men, all of whom were identified as ESC members. Appellant was in possession of nine bindles of rock cocaine at the time. Detective Aldana opined that the amount of drugs appellant had and the manner in which they were packaged indicated he possessed the drugs for sale, not personal use. Additionally, he noted that appellant did not possess the physical characteristics of a rock cocaine user, and appellant was not in possession of any drug paraphernalia which is typical of drug users. This is significant because Officer Guyton

explained that it was unusual for gang members to engage in criminal activity with non-gang members. Gang members know that they can trust their fellow gang members to look out for them when committing crimes. Furthermore, appellant was uncooperative with police when he was arrested, stating that he was in the apartment to buy drugs but he did not know from whom. He also claimed not to know the other men in the apartment. However, appellant was the only person in the apartment who possessed a key to the door. Officer Guyton explained that appellant's reluctance to cooperate with the police demonstrated that appellant had an alliance with the others in the apartment and had knowledge of and participated in the [activities] taking place there.

Appellant argues that the evidence merely shows that he was a customer buying drugs at the time of his arrest, but the jury necessarily rejected that argument when it convicted him of possession for sale. Certainly, the jury was entitled to reach this conclusion and in doing so could infer that appellant was working in concert with the other gang members in the apartment. Indeed, Officer Guyton explained that selling drugs was how the ESC members obtained money to support their gang. Additionally, other evidence indicated appellant's membership in the ESC. The apartment in which appellant and the others were arrested, although not within the boundaries of the traditional ESC "turf" was in an area in which many members of the ESC have been known to loiter. In fact, Officer Guyton stated that the ESC has some small areas outside of its normal turf which the officer considers part of the gang turf. The apartment was located in that area. Additionally, Officer Talbot testified that he came into contact with appellant previously, when appellant was accompanying two ESC gang members in a car. The officer found a loaded handgun and marijuana in the car. Appellant's association with other gang members on a separate occasion further indicated appellant's gang status. Based on the above information, in addition to appellant's claim during booking that he was a "Crip" member, Officer Guyton opined that appellant was indeed a member of the ESC. Ample evidence supported this opinion, and the jury could find appellant was a member of the gang. As such, the jury could infer that appellant had knowledge of the gang's activities and promoted, furthered or assisted the members in their criminal conduct.

Appellant points to the fact that he had little money in his possession when he was arrested and argues that indicates that he was not engaged in selling drugs. However, the jury rejected this argument when it found appellant possessed the drugs for sale. In addition, Detective Aldana explained that individuals often engage in "team sales" where one person holds the drugs and another holds the money so that if the person holding the drugs is apprehended, the group still has the proceeds from the sale. In this case, appellant only possessed $7 when he was arrested; however, the other men had substantially more money in their possession (one had $115, one had $75 and one had $67). This indicates that appellant was working with the other men in selling the drugs. Coupled with Officer Guyton's testimony that it is unusual for gang members to engage in criminal activity with non-gang members, the evidence demonstrated that appellant was a member of the ESC gang. From the fact that appellant was engaged in an activity which provides the gang with income, the jury could infer that appellant was willfully promoting, furthering or assisting the gang in its criminal activities.

A reasonable trier of fact could find this evidence more than a mere coincidence. Rather, this evidence created belief beyond a reasonable doubt that appellant's participation in the ESC at the time of the current offense was more than passive or nominal. Substantial evidence supports appellant's convictions on count 2 (§ 186.22, subd. (a)) and on the gang enhancement (§ 186.22, subd. (b)(l)) because a reasonable trier of fact could find appellant was an active participant in a street gang at the time of his current offense.

See Exhibit 3, Motion.

As fully discussed by the appellate court, the evidence was sufficient such that a rational trier of fact could have found Petitioner actively participated in a criminal street gang beyond a reasonable doubt. Thus, the state court's rejection of this claim was neither contrary to or an unreasonable application of clearly established Federal law, nor an unreasonable determination of the facts in light of the evidence presented. See 28 U.S.C. § 2254(d). The claim should be denied.

## RECOMMENDATION

Accordingly, the Court RECOMMENDS that the petition for writ of habeas corpus be DENIED WITH PREJUDICE and the Clerk of Court be DIRECTED to enter judgment for Respondent.

This Findings and Recommendation is submitted to the Honorable Oliver W. Wanger, United States District Court Judge, pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Rule 72-304 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within thirty (30) days (plus three days if served by mail) after being served with a copy, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendation."  Replies to the objections shall be served and filed within ten (10) court days (plus three days if served by mail) after service of the objections.  The Court will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636(b)(1)(C).  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated: **February 6, 2008**          /s/ **Gary S. Austin**
          UNITED STATES MAGISTRATE JUDGE